# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW HAMPSHIRE

ISAAC GREEN,

                 Plaintiff,

   v.

YOUTUBE, INC., et al.,

                 Defendants.

Case No. 18-cv-203-PB

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT FACEBOOK'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II.  STATEMENT OF RELEVANT FACTS ..................................................................2

III.  THE COURT SHOULD DISMISS THIS ACTION BECAUSE IT LACKS
PERSONAL JURISDICTION OVER FACEBOOK AND BECAUSE GREEN
HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE
GRANTED. ...............................................................................................................5

    A.  Green has not alleged facts sufficient to establish that this Court can
exercise personal jurisdiction over Facebook. ..........................................5

    B.  Green's claims are barred by Section 230 of the Communications Decency
Act...............................................................................................................8

        1.  Facebook provides an interactive computer service. ..................10

        2.  Facebook acted in good faith in removing or restricting access to
Green's content on Facebook's platform. ...................................10

    C.  Green has failed to state a claim against Facebook. ...............................11

        1.  Green cannot state a claim under the First Amendment. ............12

        2.  Green cannot state a claim under the Allow States and Victims to
Fight Online Sex Trafficking Act. .............................................13

        3.  Green cannot state a claim under the Computer Fraud and Abuse
Act...............................................................................................14

        4.  Because Green has failed to allege that he is a Facebook employee,
his FLSA claim fails. ..................................................................15

        5.  Green cannot state a claim under the SAVE Act.........................16

        6.  Green's remaining claims fail......................................................17

    D.  Granting leave to amend would be futile..................................................18

IV.  IN THE ALTERNATIVE, IF THE COURT DECLINES TO DISMISS THE
COMPLAINT, IT MUST TRANSFER THIS LITIGATION TO THE
NORTHERN DISTRICT OF CALIFORNIA. ..........................................................19

A.    Green contractually agreed to litigate any claims against Facebook in California when he created his Facebook account.................................................20

B.    The parties' forum selection clause must be enforced..........................................21

V.    CONCLUSION....................................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

*A Corp. v. All Am. Plumbing, Inc.*
 812 F.3d 54 (1st Cir. 2016)..................................................................................8

*Abat v. Chase Bank USA, N.A.*
 738 F. Supp. 2d 1093 (C.D. Cal. 2010) ...................................................................23

*Am. Libraries Ass'n v. Pataki*
 969 F.Supp.160 (S.D.N.Y. 1997) ............................................................................24

*Archdiocese of St. Louis v. Internet Entm't Grp., Inc.*
 No. 99-cv-27-SNL, 1999 WL 66022 (E.D. Mo. Feb. 12, 1999) ..............................23

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009)............................................................................................11, 12

*Balistreri v. Pacifica Police Dep't*
 901 F.2d 696 (9th Cir. 1990) ................................................................................12

*BNSF Ry. Co. v. Tyrrell*
 137 S. Ct. 1549 (2017)............................................................................................7

*Carafano v. Metrosplash.com, Inc.*
 339 F.3d 1119 (9th Cir. 2003) .................................................................................9

*Cintron-Luna v. Roman-Bultron*
 668 F. Supp. 2d 315 (D.P.R. 2009).........................................................................17

*Daimler AG v. Bauman*
 571 U.S. 117 (2014)............................................................................................6, 7

*e360Insight, LLC v. Comcast Corp.*
 546 F. Supp. 2d 605 (N.D. Ill. 2008) .....................................................................10

*F.T.C. v. Accusearch, Inc.*
 570 F.3d 1187 (10th Cir. 2009) ...............................................................................9

*Facebook, Inc. v. Power Ventures, Inc.*
 No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ........................22

*Fellner ex rel Estate of Fellner v. Philadelphia Toboggan Coasters, Inc.*
 No. Civ. A. 05-2052, 2005 WL 2660351 (E.D. Pa. Oct. 18, 2005)..........................20

iii

*Flores-Silva v. McClintock-Hernandez*
    710 F.3d 1 (1st Cir. 2013) ...........................................................................................18

*Forbes v. Facebook, Inc.*
    No. 16 CV 404 (AMD), 2016 WL 676396 (E.D.N.Y. Feb. 18, 2016) ......................................12

*Franklin v. Facebook Inc.*
    No. 15-cv-00655-LMM, 2015 WL 7755670 (N.D. Ga. Nov. 24, 2015) ..................................22

*Froelich v. Petrelli*
    472 F. Supp. 756 (D. Haw. 1979) .................................................................................19

*Fteja v. Facebook, Inc.*
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...........................................................................22

*Galloway Farms, Inc., v. United States*
    834 F.2d 998 (Fed. Cir. 1987) ....................................................................................19

*Gaston v. Facebook, Inc.*
    No. 3:12-cv-63-ST, 2012 WL 629868 (D. Or. Feb. 2, 2012) ...............................................10

*Hancock v. Cty. of Rensselaer*
    882 F.3d 58 (2d Cir. 2018) .........................................................................................15

*Hecking v. Barger*
    No. 08-cv-490-JL, 2010 WL 653553 (D.N.H. Feb. 23, 2010) ..............................................12

*Hollander v. McCain*
    566 F. Supp. 2d 63 (D.N.H. 2008) ...............................................................................18

*Holomaxx Techs. v. Yahoo!, Inc.*
    No. CV-10-4926, 2011 WL 865794 (N.D. Cal. Mar. 11, 2011) ............................................10

*I.N.S. v. Delgado*
    466 U.S. 210 (1984) ..................................................................................................18

*Int'l Shoe Co. v. State of Washington*
    326 U.S. 310 (1945) ....................................................................................................6

*King v. Friends of Kelly Ayotte*
    860 F. Supp. 2d 118 (D.N.H. 2012) ..............................................................................13

*Klayman v. Zuckerberg*
    753 F.3d 1354 (D.C. Cir. 2014), *cert. denied*, 135 S. Ct. 680 (2014) ...................................10

*Lancaster v. Alphabet Inc.*
    No. 15-cv-05299-HSG, 2016 WL 3648608 (N.D. Cal. July, 8, 2016) ....................................15

1284731

*Lugar v. Edmondson Oil Co.*
  457 U.S. 922 (1982)...........................................................................................13

*LVRC Holdings LLC v. Brekka*
  581 F.3d 1127 (9th Cir. 2009) ..........................................................................15

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*
  142 F.3d 26 (1st Cir. 1998)..................................................................................6

*Miller v. Facebook*
  No. 09-cv-2810-RLV, 2010 WL 9525523 (N.D. Ga Jan. 15, 2010) ...................23

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*
  591 F.3d 250 (4th Cir. 2009) ...............................................................................9

*Pagan v. Google Corp.*
  No. 16-CV-401-JD, 2016 WL 7187645 (D.N.H. Nov. 15, 2016) ...........................12

*Passic v. State*
  98 F. Supp. 1015 (E.D. Mich. 1951)....................................................................20

*Poole v. Baker*
  874 F. Supp. 222 (C.D. Ill. 1994) .......................................................................19

*Pruell v. Caritas Christi*
  678 F.3d 10 (1st Cir. 2012)..................................................................................16

*Ralls v. Facebook*
  221 F. Supp. 3d 1237, 1243 .................................................................................7

*Safeco Ins. Co. v. Miller*
  591 F. Supp. 590 (D. Md. 1984) ..........................................................................19

*Salahuddin v. Cuomo*
  861 F.2d 40 (2d Cir. 1988) ..................................................................................17

*Sayied v. White*
  89 Fed. App'x 284 (1st Cir. 2004).......................................................................17

*Shemonsky v. Office of Thrift Supervision Dep't of Treasury*
  733 F. Supp. 892 (M.D. Pa. 1990)........................................................................19

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*
  144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015)......................................................10

*Silva v. Encyclopedia Britannica Inc.*
  239 F.3d 385 (1st Cir. 2001)................................................................................21

v

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*
  No. 09-4567, 2011 WL 900096 (D.N.J. Mar. 15, 2011) ........................................................10

*Steir v. Girl Scouts of USA*
  218 F. Supp. 2d 58 (D.N.H. 2002) ........................................................................................6, 8

*Summers v. Earth Island Inst.*
  555 U.S. 488 (2009) ................................................................................................................18

*United States v. Nosal*
  676 F.3d 854 (9th Cir. 2012) ............................................................................................14, 15

*United States v. Swiss Am. Bank, Ltd.*
  274 F.3d 610 (1st Cir. 2001) ...............................................................................................6, 7

*Viaggio v. Field*
  177 F. Supp. 643 (D. Md. 1959) ...........................................................................................19

*Walden v. Fiore*
  134 S. Ct. 1115 (2014) ..............................................................................................................7

*Waterhouse v. CUFI Church Ass'n Inc.*
  No. 14-00144 SOM-KSC, 2014 WL 2938396, at *4 (D. Haw. June 27, 2014) ......................12

*Yeo v. Town of Lexington*
  131 F. 3d 241 (1st Cir. 1997) .................................................................................................12

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*
  774 F.3d 1065 (6th Cir. 2014) ................................................................................................14

*Young v. Facebook, Inc.*
  No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ............................12

**State Cases**

*Finkel v. Facebook, Inc.*
  No. 102578/09, 2009 WL 3240365 (N.Y. Sup. Ct. Sept. 15, 2009)........................................10

*Tetreau v. Facebook, Inc.*
  No. 10-4558-CS (Mich. Cir. Ct. Feb. 23, 2011) ....................................................................10

**Federal Statutes**

18 U.S.C. § 1030................................................................................................................14, 15

18 U.S.C. § 1591........................................................................................................................16

18 U.S.C. § 1595...............................................................................................................11, 16, 17

18 U.S.C. § 2421A ............................................................................................11, 14

28 U.S.C. § 1404 ...................................................................................................21

47 U.S.C. § 230 ......................................................................................................10

47 U.S.C. § 230 ..................................................................................................9, 10

Pub. L. 114-22 § 118 ............................................................................................16

**Federal Rules**

Fed. R. Civ. P. 7 .....................................................................................................5

Fed. R. Civ. P. 8 ...................................................................................................17

Fed. R. Civ. P. 10 .................................................................................................18

Fed. R. Civ. P. 12 ...................................................................................... *passim*

Local Rule 7.1 .........................................................................................................5

1284731

Pursuant to Federal Rule of Civil Procedure 12, Facebook respectfully moves to dismiss this action. In the alternative, Facebook moves to transfer this action to the Northern District of California.

## I.      INTRODUCTION

*Pro se* plaintiff Isaac Green makes a slew of implausible, conspiratorial allegations against various technology companies in his amended complaint. As in the initial complaint, Defendant Facebook, Inc. remains a minor player. To the extent the amended complaint is intelligible, it contains only a handful of generalized references to Facebook. Despite this, Green claims that Facebook has violated his constitutional rights as well as several federal statutes, many of which are criminal statutes and contain no civil private right of action. Green's amended complaint is identical to a complaint filed by another plaintiff, Natasha DeLima, in a separate action pending before this Court;[1] indeed, Green has apparently given DeLima "power of attorney" to litigate this case for him.[2]

The Court should dismiss Green's frivolous claims against Facebook for the following three, independent reasons. First, Green (who apparently lives in Florida) has not pleaded facts sufficient to justify the exercise of personal jurisdiction over Facebook in New Hampshire. Second, the Communications Decency Act immunizes Facebook from suit for its management of its website. Third, Green has not alleged and cannot allege facts sufficient to support any of his claims.  The dismissal should be with prejudice, because further amendment would be futile; indeed, Green's amended complaint does not remedy any of the deficiencies that Facebook identified in its initial motion to dismiss.

---

[1] *DeLima v. YouTube et al.*, No. 17-cv-733, ECF No. 73-1.

[2] ECF No. 1-1 (Green's "Power of Attorney").

1

In the alternative, Facebook respectfully requests that the Court transfer this litigation to the United States District Court for the Northern District of California. Green contracted to litigate his claims in that Court when he created his Facebook account.

## II.   STATEMENT OF RELEVANT FACTS

Facebook is a free-to-use online social media platform. Facebook users communicate with one another through the Internet. Facebook is incorporated in Delaware and maintains its principal place of business in California.

In this action, Green has sued seven leading Internet companies. Green filed his initial complaint on March 5, 2018.[3] In his original complaint, Green made only a handful of generalized allegations against Facebook, but nonetheless sought to bring claims against Facebook for violation of the First Amendment, violation of "[e]very US & Federal law," and negligent infliction of emotion distress. On March 14, 2018, the Court ordered the U.S. Marshals Service to serve Defendants and for Defendants to respond to Green's initial complaint, as well as to several miscellaneous motions, within 21 days of service.[4] Facebook was served on April 24, and it timely filed its first motion to dismiss on May 15.[5]

Although Green filed an opposition to Facebook's motion to dismiss,[6] he subsequently filed what appears to be an amended complaint on May 23.[7]

Like his original complaint, Green's amended complaint is made up largely of various conspiratorial and largely incomprehensible allegations. For example, Green alleges that "[a]ll

---

[3] ECF No. 1 (Compl.)

[4] ECF No. 6.

[5] ECF Nos. 37 & 48.

[6] ECF No. 53.

[7] ECF Nos. 59 & 59-1.

website are stalking the Plaintiff's and locking them out of their channels & even their own

websites"[8] and that "Google chooses to allow for a 'fake profile' and weaponized themselves

against lawful users, and does not keep virtual property domains protected, thus incurring

additional liability, and is in fact complicit in aiding for a total manipulation of truth to be

contained in their internet domain, solely for the purpose of the spread of disinformation, and

targeting individuals."[9] As in his original complaint, the allegations in Green's amended

complaint, to the extent they are intelligible, mostly pertain to Defendants Google and Twitter.[10]

Allegations relating to Facebook are few and far between, and allegations about any specific

relationship between Facebook and Green are even fewer.

As to his interactions with Facebook, Green's allegations are as follows:

- Green had a Facebook account registered to "Elliot Maarxx."[11]

- Green has "tr[ied] to save children, adults and expos[e] child trafficking" and he was "targeted for doing this." Green claims Facebook allegedly "protected the trafficking ring, not those trying to save children."[12]

- On account of "political bias," "Facebook prohibited [Green] from posting YouTube videos, thus [a]ffecting [his] income and [his] right to income."[13]

- Facebook "deleted" the Elliot Maarxx account.[14]

---

[8] ECF No. 59-1 (Am. Compl.) at 4.

[9] *Id.* at 2.

[10] *See, e.g.*, *id.* at 2, 4.

[11] *Id.* at 3.

[12] *Id.* at 5.

[13] *Id.* at 6.

[14] *Id.*

3

- Facebook "sold [his] data to advertisers, and is in trouble with Congress for that."[15]

Green asserts that Facebook's alleged conduct violates the First Amendment, unnamed FCC regulations, "Internet Rules, Civil Rights, Political Rights," "Case Law, Right to Payment, FOSTA Sesta Act," the Computer Fraud and Abuse Act, "Virtual Property Rights, Presidential Executive Order of December 17, 2017," the Fair Labor Standards Act,[16] and the Stop Advertising Victims of Exploitation Act.[17] Green has apparently abandoned his claims for negligent infliction of emotional distress and for violation of "[e]very US & Federal law," found in his original complaint.  Furthermore, while in his initial complaint Green sought to bring a class action, his amended complaint apparently seeks only to litigate his individual claims. Green does purport, however, to be acting in concert with another plaintiff, Natasha DeLima, who has filed a separate action before this Court and to whom he has purportedly given "power of attorney" to pursue this action on his behalf.[18] His amended complaint in this matter contains various allegations on behalf of DeLima, and the same amended complaint was filed in the *DeLima* action.[19]

Since the Court's March 14, 2018 Order, Green also has docketed a large number of motions and other filings. For example, Green has filed a "Motion to Allow Lawful Access;"[20]

---

[15] *Id.*

[16] *Id.* at 1.

[17] *Id.* at 5.

[18] ECF No. 1-1; *DeLima v. YouTube*, et al., No 17-cv-733-PB, ECF No. 1 Facebook does not oppose consolidation of the litigation, but reserves its right to make individualized arguments against each plaintiff's pleadings. *See* ECF No. 42.

[19] *DeLima v. YouTube*, et al., No 17-cv-733-PB, ECF No. 73-1 (May 23, 2018).

[20] ECF No. 9.

4

"Plaintiff's Request Hearing Theft of Virtual Property;"[21] "Plaintiff's Joint Objection & Request

To Deny Motion To Deny Relief From Discovery Requests For All Defendants;"[22] "Plaintiff's

Joint Motion To Strike Illicit Pleading;"[23] and two "Demands for Settlement."[24] Green's filings

are largely unintelligible,[25] and they do not comport with the Federal Rules of Civil Procedure or

with this Court's Local Rules.[26]  Troublingly, Green (through DeLima) has also sent countless,

increasingly abusive communications to counsel for the various defendants, on a nearly daily

basis.[27]

## III.   THE COURT SHOULD DISMISS THIS ACTION BECAUSE IT LACKS PERSONAL JURISDICTION OVER FACEBOOK AND BECAUSE GREEN HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

### A.   Green has not alleged facts sufficient to establish that this Court can exercise personal jurisdiction over Facebook.

The Court should dismiss Green's complaint under Rule 12(b)(2) because Green—a

Florida resident[28]—has failed to allege facts sufficient to give rise to personal jurisdiction over

Facebook in this Court.[29]

---

[21] ECF No. 18.

[22] ECF No. 53.

[23] ECF No. 57.

[24] ECF Nos. 30 & 54.

[25] *E.g.*, ECF No. 59-1 at 8 ("AFFIDAVIT//The parties in this case are so criminal they don't even know how to apply the law, they are sloppy, and have defaulted themselves when they have been aware of the case for over 2 years, and it was filed in December 17, 2017 and its time for them to face that there is life after a lawsuit, and only more court when they continue to abuse the system to overbill their own clients.")

[26] *E.g.*, Fed. R. Civ. P. 7(b) & 10(b); L.R. Civ. P. 7.1(a)(2).

[27] DeLima and Green's near daily diatribes are the subject of a forthcoming motion to stay this action pending resolution of Defendants' motions to dismiss. In support of that motion, Defendants will submit evidence of DeLima and Green's abusive communications.

[28] ECF No. 1 (Compl.) at ¶ 1.

A court must dismiss a complaint if it lacks personal jurisdiction over a defendant.[30] For the Court to constitutionally exercise personal jurisdiction, the defendants must have "certain minimum contacts with [New Hampshire] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[31] Green "bears the burden of showing that a basis for asserting jurisdiction exists" by "adduc[ing] evidence of specific facts that support his jurisdictional claim."[32] In conducting this analysis, the Court does not "credit conclusory allegations or draw farfetched inferences."[33] "A court may assert authority over a defendant by means of either general or specific jurisdiction."[34] Green has failed to allege specific facts that would permit this Court to exercise either.

To exercise general jurisdiction, the Court must find (1) that there are "'continuous and systematic general business contacts'" between Facebook and New Hampshire and (2) that the "exercise of jurisdiction would be reasonable."[35] But Facebook does not have continuous and systemic general business contacts in New Hampshire. A corporate defendant is normally "at home" in just two places: "the place of incorporation and principal place of business."[36] Facebook is incorporated under the laws of Delaware and maintains its principal place of

---

[29] Fed. R. Civ. P. 12(b)(2).

[30] *Id.*

[31] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

[32] *Steir v. Girl Scouts of USA*, 218 F. Supp. 2d 58, 61-62 (D.N.H. 2002) (internal quotation marks and citation omitted).

[33] *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) (quotation marks and citation omitted).

[34] *Steir*, 218 F. Supp. 2d at 63.

[35] *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001) (*Swiss Am. Bank*) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

[36] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

6

business in California.[37] As a result, general jurisdiction would be proper only in an "exceptional case" where Facebook's "operations in [New Hampshire] 'may be so substantial and of such a nature as to render [it] at home in [New Hampshire].'"[38] Green cannot meet this demanding standard.  Even if Green were to allege (he has not) that he (or others) utilized Facebook while in New Hampshire, his claims would fail to establish jurisdiction. "A corporation that operates in many places can scarcely be deemed at home in all of them," and any contrary ruling would create substantial uncertainty and disuniformity for Internet companies such as Facebook.[39]

Nor has Green alleged facts sufficient to establish that this Court has specific jurisdiction over Facebook. For this Court to exercise specific jurisdiction, Green would have to show that Facebook's "suit-related conduct . . . create[s] a substantial connection with [New Hampshire]."[40] This analysis requires findings that (1) "the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with [New Hampshire];" (2) that "those contacts constitute purposeful availment of the benefits and protections afforded by [New Hampshire's] laws;" and (3) that "the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction."[41]

---

[37] *See, e.g.*, Facebook, Inc. Form 10-K for the Fiscal Year Ended December 31, 2017 at 1, 7, *available at* http://d18rn0p25nwr6d.cloudfront.net/CIK-0001326801/c826def3-c1dc-47b9-99d9-76c89d6f8e6d.pdf. The Court may take judicial notice of defendants' state of incorporation and principal place of business based on such documents for the purpose of deciding a Rule 12(b)(2) motion. *See Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1243 n.4 (W.D. Wash. 2016).

[38] *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG*, 571 U.S. at 139 n.19).

[39] *Daimler AG*, 571 U.S. at 139 n.20.

[40] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

[41] *Swiss Am. Bank*, 274 F.3d at 620-21.

As a matter of law, Green —who bears the burden of establishing personal jurisdiction[42]—cannot make any of these three showings. In the First Circuit, the general "availability of [a defendant's] website" is insufficient to establish the relatedness prong.[43] And where, as here, the "only one real contact" between the forum and the defendant is the "use of a website that is accessible from everywhere in the world," there "is not enough to show purposeful availment."[44]

Even though this fatal deficiency was identified in Facebook's motion to dismiss the original complaint, Green does not even attempt to allege facts in his amended complaint to show any Facebook contacts with New Hampshire, any connection between such contacts and his claims, or any purposeful availment.  Green does not even allege that any of his Internet use at issue occurred in New Hampshire. Nor could he; in Green's initial complaint, he clearly alleged that *he lives in Florida*, not New Hampshire.[45] Because Green fails to allege facts sufficient to subject Facebook to this Court's personal jurisdiction, his complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

### B.     Green's claims are barred by Section 230 of the Communications Decency Act.

Although the amended complaint is unclear, it appears that Green's claims are based at least in part on Facebook's alleged removal of content from its platform—*i.e.*, Green's allegations that Facebook "deleted" his account and "prohibited [Green] from posting YouTube

---

[42] *Steir*, 218 F. Supp. 2d at 63.

[43] *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016).

[44] *Id.*

[45] ECF No. 1 (Compl.) at ¶ 1.

videos, thus [a]ffecting [his] income and [his] right to income."[46]  To the extent that is the case, his claims thus fail for another reason: they are barred by the Communications Decency Act (CDA), 47 U.S.C. § 230(c).

Congress enacted the CDA to foster the development of the Internet by shielding Internet service providers from lawsuits arising out of their efforts to screen user-generated content.[47] The statute furthers two fundamental policy goals: "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material."[48] CDA immunity, "like other forms of immunity, is generally accorded effect at the first logical point in the litigation process," because "immunity is an *immunity from suit* rather than a mere defense to liability."[49]

Here, Facebook is entitled to CDA immunity because (1) it is a provider of an "interactive computer service," and (2) it acted "voluntarily" and in "good faith to restrict access to or availability of material that [it] or the user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable," regardless of whether "such material is constitutionally protected."[50]

---

[46] ECF No. 59-1 (Am. Compl.) at 6.

[47] *F.T.C. v. Accusearch, Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009) (citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)).

[48] *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).

[49] *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (*quoting Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original).

[50] 47 U.S.C. § 230(c)(2)(A).

### 1.   Facebook provides an interactive computer service.

Facebook undoubtedly qualifies as a "provider" of an "interactive computer service."[51] The CDA broadly defines "interactive computer service" to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."[52] Every court to consider whether Facebook meets this definition has rightly concluded it does.[53]

### 2.   Facebook acted in good faith in removing or restricting access to Green's content on Facebook's platform.

CDA immunity applies when an Internet service provider like Facebook acts in good faith and removes content from or restricts access to content on its platform that the internet service provider finds objectionable.[54] The determination of whether certain material is "objectionable" under Section 230(c)(2)(A) is subjective from the perspective of the interactive computer service provider.[55] And if Green is arguing that Facebook failed to exercise this judgment in "good faith," that attack is also misguided and futile. The "good faith" requirement requires Green to plead "an absence of good faith."[56] And, Green fails to do so here. His vague

---

[51] 47 U.S.C. § 230(c)(1).

[52] *Id.* § 230(f)(2).

[53] *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014), *cert. denied*, 135 S. Ct. 680 (2014); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015); *Gaston v. Facebook, Inc.*, No. 3:12-cv-63-ST, 2012 WL 629868, at *7 (D. Or. Feb. 2, 2012); *Tetreau v. Facebook, Inc.*, No. 10-4558-CS (Mich. Cir. Ct. Feb. 23, 2011); *Finkel v. Facebook, Inc.*, No. 102578/09, 2009 WL 3240365 (N.Y. Sup. Ct. Sept. 15, 2009).

[54] *Id.* § 230(c)(2)(A).

[55] *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 608 (N.D. Ill. 2008); *Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, No. 09-4567, 2011 WL 900096, at *5-6 (D.N.J. Mar. 15, 2011).

[56] *See, e.g.*, *e360 Insight*, 546 F. Supp. 2d at 609; *Holomaxx Techs. v. Yahoo!, Inc.*, No. CV-10-4926, 2011 WL 865794, at *5 (N.D. Cal. Mar. 11, 2011).

1284731

allegations about Facebook limiting the content he could post on its platform, even if true, thus fall squarely within the immunity granted by the CDA.

Green's cursory reference to the recently enacted Allow States and Victims to Fight Online Sex Trafficking Act (FOSTA-SESTA) does not change this analysis and does not apply here.[57] FOSTA-SESTA is a narrow exception to CDA immunity involving "criminal prosecution brought under" certain state criminal laws relating to sex trafficking and the ability of victims of sex traffickers to bring specific civil actions in certain circumstances.[58] FOSTA-SESTA has no applicability to this case, because Green's action is not a criminal prosecution for violation of state criminal laws relating to sex trafficking and Green has not alleged any facts that remotely suggest—much less establish—that he is a victim of sex traffickers.[59] Green's claims are therefore barred by the CDA.

## C.    Green has failed to state a claim against Facebook.

Even if this Court exercises personal jurisdiction over Facebook and holds that Facebook is not immune from this suit under the CDA, Green's amended complaint still falls because he has not adequately alleged any claim against Facebook.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[60]

---

[57] ECF No. 59-1 (Am. Compl.) at 5. The Act is Public Law 115-164. Its amendments to the CDA are codified at 47 U.S.C. 230(e)(5). The remainder of SESTA-FOSTA, which creates a new federal criminal prohibition and a related civil cause of action, is codified at 18 U.S.C. § 2421A, and is discussed further in section III.C.2, below.

[58] 47 U.S.C. 230(e)(5) (codifying FOSTA-SESTA's amendment to the CDA).

[59] 18 U.S.C. § 1595(a). See further discussion of Green's failure to plead a claim under § 1595 in section III.C.5, below.

[60] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1284731

Dismissal under Rule 12(b)(6) is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[61] In evaluating the complaint's sufficiency, the Court disregards allegations that are "no more than conclusions" or "[t]hreadbare recitals of the elements."[62] While courts will liberally construe a *pro se* litigant's pleadings, "a court is not required 'to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like need not be credited.'"[63] Here, even accepting as true the allegations in the complaint, Green fails to allege against Facebook facts sufficient to support any cause of action.

### 1.    Green cannot state a claim under the First Amendment.

Green pleads a cause of action for violations of the First Amendment.[64]  But Green cannot bring a First Amendment claim against Facebook because it is a private actor. As the First Circuit has held, "[i]f there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."[65] Courts in this District and others have repeatedly dismissed, at the pleading stage and on this basis alone, First Amendment claims brought against Facebook and other Internet companies.[66] This Court should do the same.

---

[61] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[62] *Iqbal*, 556 U.S. at 678-79.

[63] *Hecking v. Barger*, No. 08-cv-490-JL, 2010 WL 653553, at *1 (D.N.H. Feb. 23, 2010) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).

[64]  ECF No. 59-1 (Am. Compl.) at 1.

[65] *Yeo v. Town of Lexington*, 131 F. 3d 241, 248-49 (1st Cir. 1997).

[66] *See, e.g.*, *Pagan v. Google Corp.*, No. 16-CV-401-JD, 2016 WL 7187645, at *2 (D.N.H. Nov. 15, 2016) (recommending dismissal of constitutional claims against Google), *report and recommendation adopted*, No. 16-CV-401-JD, 2016 WL 7187312 (D.N.H. Dec. 8, 2016); *Forbes v. Facebook, Inc.*, No. 16 CV 404 (AMD), 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016); *Waterhouse v. CUFI Church Ass'n Inc.*, No. 14-00144 SOM-KSC, 2014 WL 2938396, at *4 (D. Haw. June 27, 2014) (dismissing § 1985(3) conspiracy claim against Twitter); *Young v.*

Under a narrow exception to the public-action doctrine, a plaintiff can state a constitutional claim against a private actor where the private actor "assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity."[67] This doctrine cannot save Green's complaint. He does not allege any way in which Facebook has assumed a public function, or that the state coerced Facebook's conduct, or that Facebook and the state are "interdependent."[68] Because Green fails to make any particular allegations tying Facebook, as a private defendant, to state action, he cannot state any First Amendment claim against it.[69] Accordingly, Green's First Amendment claim fails.

> **2.      Green cannot state a claim under the Allow States and Victims to Fight Online Sex Trafficking Act.**

Green claims in cursory fashion that "Facebook is in violation" of FOSTA-SESTA.[70] To the extent Green seeks by this allegation to bring a civil claim under FOSTA-SESTA, this baseless and offensive allegation fails. As mentioned above in Section III.B.2, FOSTA-SESTA

---

*Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *2-3 (N.D. Cal. Oct. 25, 2010).

[67] *King v. Friends of Kelly Ayotte*, 860 F. Supp. 2d 118, 125 (D.N.H. 2012) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 68-69 (1st. Cir. 2011)) (internal brackets omitted); *see generally Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[68] *King*, 860 F. Supp. 2d at 125.

[69] *E.g.*, *King*, 860 F. Supp. 2d at 124-26.

[70] ECF No. 59-1 (Am. Compl.) at 5.

amends the CDA immunity provision in a manner irrelevant to this suit.[71] It also permits victims

of sex traffickers to bring specific civil actions against certain parties in certain circumstances.[72]

But as noted above, the private civil right of action is only available to a "person injured" by

such trafficking.[73]  Green does not allege that he is a sex trafficking victim. Instead, in

conclusory fashion Green alleges that he has somehow tried to "save children, adults and

expos[e] child trafficking," that he "ha[s] been targeted" in some unknown way by some

unidentified person or persons "for doing this," and that Facebook "protected" some unidentified

trafficking ring in some unknown manner.[74] This bald, implausible, and offensive allegation is

entirely insufficient to state any cause of action much less one under FOSTA-SESTA.

### 3. Green cannot state a claim under the Computer Fraud and Abuse Act.

The Computer Fraud and Abuse Act (CFAA), codified at 18 U.S.C. § 1030, is primarily a

criminal statute.[75] It also provides for civil liability for "computer hacking," that is,

"intentionally trespassing into someone else's computer files."[76] There are two ways to state a

civil CFAA claim. To state a Section 1030(a)(2) claim, the plaintiff must show that a defendant:

"(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access,

and that he (3) thereby obtained information (4) from any protected computer (if the conduct

involved an interstate or foreign communication), and that (5) there was loss to one or more

---

[71] *See* section III.B, *supra*.

[72] 18 U.S.C. § 2421A(c).

[73] *Id.*

[74] ECF No. 59-1 (Am. Compl.) at 5.

[75] *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1072 (6th Cir. 2014).

[76] *United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (internal quotations and citation omitted).

persons during any one-year period aggregating at least $5,000 in value."[77] To state a Section 1030(a)(4) claim, the plaintiff must show that a defendant: "(1) accessed a protected computer, (2) without authorization or exceeding such authorization that was granted, (3) knowingly and with intent to defraud, and thereby (4) furthered the intended fraud and obtained anything of value, causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value."[78]

Green has failed to state a claim under this statute because he has not alleged and cannot allege that Facebook hacked his computer.  The CFAA is about hacking,[79] and Green fails to allege that Facebook accessed his computer without his consent, that Facebook obtained information or committed a fraud through such hacking, or that he suffered financial loss because of such actions.[80] At most, he alleges that after he signed up for a Facebook account, Facebook suspended or terminated his account (the amended complaint is unclear on this point) and sold unspecific information to advertisers.[81] Because this conduct is not cognizable under the CFAA, Green's claim under Section 1030 fails.[82]

> ### 4.    Because Green has failed to allege that he is a Facebook employee, his FLSA claim fails.

To state a valid claim under the Fair Labor and Standards Act, Green must allege that: (1) he was employed by Facebook; (2) his work involved interstate activity; and (3) he performed

---

[77] *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).

[78] *Id* (internal brackets and quotations omitted).

[79] *See Nosal*, 676 F.3d at 859.

[80] CFAA damages are limited to economic losses. *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018).

[81] *See* ECF No. 59-1 (Am. Compl.) at 6.

[82] *E.g.*, *Lancaster v. Alphabet Inc.*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *6 (N.D. Cal. July, 8, 2016) (dismissing CFAA claim on facts similar to Green's).

work for which he did not receive compensation mandated by FLSA.[83] Green does not allege facts sufficient to meet any of these three elements. He does not allege Facebook employs or has ever employed him. He does not allege when his employment began or when it ended—nor could he, because he was never employed by Facebook. Nor does he allege facts about any labor he has undertaken on Facebook's behalf. He fails to allege what compensation he received from Facebook or what compensation he purportedly is owed. The mere allegation that Facebook prohibited Green from posting YouTube videos is insufficient to establish an employer/employee relationship, much less a violation of FLSA.[84] Accordingly, Green has failed to state a FLSA claim.

**5.     Green cannot state a claim under the SAVE Act.**

18 U.S.C. § 1591 is a statute that imposes federal criminal liability on sex traffickers. It does not contain a private right of action or impose civil liability. 18 U.S.C. § 1595 permits victims of the criminal conduct described in 18 U.S.C. § 1591 to bring a civil action against the perpetrator of the trafficking or anyone who knowingly benefitted from certain types of human trafficking.[85] The SAVE Act, signed into law as part of the Justice for Victims of Trafficking Act of 2015,[86] expanded the scope of Section 1591 without changing Section 1595.

Green cannot state a claim under Section 1591 because that is a criminal statute with no private right of action. Nor can Green state a claim under Section 1595. To do so, the plaintiff must allege that he has been a victim of a conduct criminalized by Chapter 77 of Title 18 of the United States Code, which pertains to slavery, peonage, and human trafficking. Green has not

---

[83] *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012).

[84] ECF No. 59-1 (Am. Compl.) at 6.

[85] *See* 18 U.S.C. § 1595(a).

[86] Pub. L. 114-22 § 118.

16

made such an allegation. And, a Section 1595 claim may only lie against the perpetrator or a knowing beneficiary of the trafficking.[87] Green has not alleged and cannot allege that Facebook meets that definition. Accordingly, Green's claim under this statute must be dismissed.

### 6.    Green's remaining claims fail.

Green's claims for violations of or for unnamed "FCC Rules," "Internet Rules," "Civil Rights," "Political Rights," "Case Law," "Right to Payment," "Virtual Property Rights," and "Presidential Executive Order of December 17, 2017"—to the extent these claims are even intended to apply to Facebook—must also be dismissed.[88]

To start, these vague allegations are plainly insufficient under both Rule 8(a)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Most of these categories, such as "political rights" and "case law," do not refer to laws with private rights of action. And even those categories that might encompass statutes with private rights of action are entirely too indefinite to put Facebook on notice as to what law or laws Green alleges Facebook to have violated. Courts regularly dismiss such scatter-shot claims,[89] including in cases brought by *pro se* plaintiffs.[90]

---

[87] *See* 18 U.S.C. § 1595(a).

[88] ECF No. 59-1 (Am. Compl.) at 1.

[89] Where a complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may be dismissed for violating Rule 8. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Sayied v. White*, 89 Fed. App'x 284 (1st Cir. 2004) (citing *Salahuddin* and affirming dismissal of complaint that was "so prolix, redundant and unintelligible that it would have been unreasonable to expect defendants to frame a response to it").

[90] *E.g.*, *Cintron-Luna v. Roman-Bultron*, 668 F. Supp. 2d 315, 318 (D.P.R. 2009) (citing *Salahuddin* and *Sayied* and noting that "[w]hile pro se litigants' pleadings are to be liberally construed and the Court takes a more lenient stance towards their technical defects, this is no excuse for the failure to make comprehensible the specific claims and facts supporting those claims that would comprise a plausible claim for relief").

As to the "Executive Order," it does not appear that President Trump issued an Executive Order on December 17, 2017. An Executive Order issued four days later places restrictions on thirteen listed foreign individuals involved in human rights abuses.[91] Needless to say, the executive order does not mention Facebook and has nothing to do with this case.  Furthermore, Green does not have standing to enforce this executive order.

Furthermore, to the extent Green's allegations relate to harm allegedly suffered by other people,[92] he lacks standing to pursue those claims. To have Article III standing, a plaintiff must allege a personalized injury-in-fact.[93] Plaintiffs may only "litigate what happened to them."[94] Thus, Green cannot litigate what he claims happened to other people, but not to his. For these reasons, Green's other claims fail as a matter of law.[95]

### D.      Granting leave to amend would be futile.

This Court need not grant Green leave to amend his complaint if doing so would be "futile."[96] Futile it would be. Green has demonstrated that he cannot state any claim against

---

[91] Executive Order Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption (Dec. 21, 2017), https://www.whitehouse.gov/presidential-actions/executive-order-blocking-property-persons-involved-serious-human-rights-abuse-corruption/.

[92] *E.g.*, ECF No. 59-1 (Am. Compl.) at 2 (alleging that Co-Defendant Google "worked with Democrats, and Hillary Clinton").

[93] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

[94] *I.N.S. v. Delgado*, 466 U.S. 210, 221 (1984); *cf. Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008) (dismissing complaint where voter's pleaded interest was indistinct from other voters').

[95] In his initial complaint, Green pleaded a cause of action for negligent infliction of emotional distress (NIED). Because Green does not re-plead that claim in his amended complaint, it is waived. If the Court is inclined to address the Green claim on the merits, it should dismiss the claim because Green failed to plead facts sufficient to state a claim and because the Court lacks subject-matter jurisdiction over this state-law claim. *See* ECF No. 48 (Facebook's first Motion to Dismiss) at 9-11; Fed R. Civ. P. 10(c) (permitting a motion to adopt a statement by reference).

[96] *Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 4 (1st Cir. 2013).

Facebook. Green's initial complaint failed to establish this Court's personal jurisdiction or to state a claim. Green then filed his amended complaint, but the amended complaint addressed none of the issues Facebook raised in its first motion to dismiss. If Green could allege actionable facts against Facebook, he would have done so in one of these pleadings (or the numerous other documents he has laid on the docket). Ultimately, Green cannot manufacture this Court's personal jurisdiction over Facebook. He cannot overcome Facebook's CDA immunity. He cannot pursue a First Amendment claim against a private actor. The Amended Complaint's newly found but ultimately misplaced focus on sex trafficking does nothing to help Green state any cause of action. Further amendment will solve none of these problems. To conserve judicial and party resources, the Court should end this litigation now by dismissing the amended complaint against Facebook without leave to amend.

## IV.   IN THE ALTERNATIVE, IF THE COURT DECLINES TO DISMISS THE COMPLAINT, IT MUST TRANSFER THIS LITIGATION TO THE NORTHERN DISTRICT OF CALIFORNIA.

Although venue does not properly lie in this District, the Court can dismiss this action without transferring it, and it should do so in the interest of judicial economy, given the plain and fatal defects in the complaint.[97] However, if the Court is not inclined to address the substantive

---

[97] Courts have the power to dismiss plainly meritless litigation even when venue is not proper, and they regularly do so. *E.g.*, *Galloway Farms, Inc., v. United States*, 834 F.2d 998, 1000-01 (Fed. Cir. 1987) (affirming dismissal of frivolous claims where venue was improper in court below); *Poole v. Baker*, 874 F. Supp. 222, 224 (C.D. Ill. 1994) (dismissing frivolous action instead of transferring to court where venue was proper); *Shemonsky v. Office of Thrift Supervision Dep't of Treasury*, 733 F. Supp. 892, 895 (M.D. Pa. 1990) (suit against federal agency dismissed for failure to exhaust administrative remedies, instead of being transferred for improper venue); *Safeco Ins. Co. v. Miller*, 591 F. Supp. 590, 597 (D. Md. 1984) (transfer would not serve the 'interest of justice' where the case, if transferred, would merely be dismissed in the transferee court); *Froelich v. Petrelli*, 472 F. Supp. 756, 763 (D. Haw. 1979) (not in interests of justice to transfer case to California because case would simply be dismissed under statute of limitations); *Viaggio v. Field*, 177 F .Supp. 643, 645 (D. Md. 1959) (not in the interests of justice to transfer case to Pennsylvania so as to require defendant to engage other and additional local

failings of the complaint, Facebook requests in the alternative that the Court transfer this case to

the Northern District of California, pursuant to the parties' binding forum selection agreement.

### A. Green contractually agreed to litigate any claims against Facebook in California when he created his Facebook account.

Green registered for his Facebook account on January 19, 2018.[98]  As part of the

registration process, Green agreed to abide by Facebook's terms of use (known as the "Statement

of Rights and Responsibilities" (SRR)).[99]

The terms of use in existence on January 19, 2018 explicitly provided that users ***must***

bring any complaint against Facebook in California.[100]  The terms of use have been amended

once since then but the presence of a mandatory forum-selection clause requiring dispute

resolution in California has remained constant.[101]

---

counsel in Pennsylvania merely to plead the statute of limitations); *Passic v. State*, 98 F. Supp. 1015, 1016 (E.D. Mich. 1951) (finding transfer of frivolous habeas petition not in the interests of justice).

[98] *See* Declaration of Michael Duffey in Support of Facebook's Motion to Dismiss Plaintiff's Amended Complaint ("Duffey Decl.") ¶ 4. The Court may consider extrinsic evidence when resolving a motion to transfer. *See, e.g., Fellner ex rel Estate of Fellner v. Philadelphia Toboggan Coasters, Inc.*, No. Civ. A. 05-2052, 2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005) (explaining that a court can examine facts outside the complaint to decide venue questions).

[99] Duffey Decl. ¶ 5.

[100] In relevant part, the forum-selection clause in effect at the time Green registered his Facebook account stated:

> You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims.

Duffey Decl. ¶ 5 & Ex. A.

[101] *Id.* ¶¶ 6 & 7.

**B.**     **The parties' forum selection clause must be enforced.**

The Supreme Court held in *Atlantic Marine Construction Company, Inc. v. U.S. District Court for the Western District of Texas* that where, as here, "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."[102] 28 U.S.C. § 1404(a) is "the appropriate provision to enforce [a] forum-selection clause."[103]

The Supreme Court outlined a two-step process for deciding whether to enforce a forum selection clause. First, the court must first determine that the forum-selection clause is valid and mandatory, and that the claims are embraced within it.[104] Second, the court must examine any relevant interests at play. In terms of private interests, plaintiff's choice of forum "merits no weight" in the transfer analysis and courts "should not consider arguments about the parties' private interests."[105] As for public interests, courts must determine whether "public-interest factors" are strong enough to defeat the parties' contractual bargain, though such factors "will rarely defeat a transfer motion."[106] "In all but the most unusual cases . . . the interest of justice is served by holding parties to their bargain" and transferring the case to the forum designated in the parties' forum selection clause.[107]

As for the first step, Facebook's forum-selection clause, as explained above, is mandatory in its requirement that dispute resolution take place in California. Moreover, Facebook's online

---

[102] 571 U.S. 49, 62 (2013).

[103] *Id.*

[104] *See id.* at n.5; *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 388-89 (1st Cir. 2001).

[105] 571 U.S. at 63-64.

[106] *Id.*

[107] *Id.* at 66 (internal quotations omitted).

sign up process results in a valid contractual agreement.  Courts routinely enforce internet-based

terms of service, including Facebook's terms specifically.[108] Indeed, every federal court to have

examined the forum-selection clause has determined it to be valid and given it effect.[109] This

Court should follow the "great weight of persuasive authority" holding that Facebook's forum

selection clause is valid and enforceable.[110]

Furthermore, Green's claims against Facebook, such as they can be understood from his

pleadings, are subject to Facebook's forum-selection clause. The forum-selection clause is clear;

it requires Green to litigate "any" claim arising from or relating to his use of Facebook in

California.[111] Here, all of Green's allegations related to Facebook clearly arise out of or relate to

his use of the platform. For example, his allegation that Facebook targeted him based on his

political beliefs arises from his use of the platform, as does his allegation that Facebook sold

certain information to advertisers.[112] Accordingly, Facebook's forum-selection clause applies to

this dispute.

As for the second step of the *Atlantic Marine* framework—the examination of relevant

interests—they too counsel in favor of enforcing the forum selection clause. Because *Atlantic*

---

[108] *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (by registering for Facebook, the plaintiff had "assented to [Facebook's] Terms of Use and therefore to the forum selection clause therein"); *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 n.20 (N.D. Cal. July 20, 2010) (defendant agreed to Terms by virtue of accessing or using Facebook).

[109] *See Franklin v. Facebook Inc.*, No. 15-cv-00655-LMM, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015) ("The Court ***cannot identify a single instance where any federal court has struck down Defendant's [Terms]*** as an impermissible contract of adhesion induced by fraud or overreaching or held the forum selection clause now at issue to be otherwise unenforceable due to public policy considerations.") (emphasis added).

[110] *Id.*

[111] *See supra*, n.100.

[112] ECF No. 59-1 (Am. Compl.) at 6.

*Marine* precludes consideration of any private-interest factors, this action must be transferred unless Plaintiff can show that the public-interest factors "overwhelmingly disfavor a transfer."[113] Green cannot make that showing.

The public maintains a strong interest in enforcing forum-selection clauses to provide consistency and certainty for companies such as Facebook.  Indeed, courts have long recognized the "importance of enforcing choice of law provisions for businesses with nationwide customers to limit the risk and expenses of litigation under different laws in every state."[114]  If anything, that need for certainty is even more acute for Internet companies such as Facebook, because their web-based services can be accessed nearly anywhere.  One court recognized that the failure to enforce forum-selection clauses would cause significant disruption for both Internet companies and their millions of users:

> [S]triking the forum selection clause could wreak havoc on the entire social-networking internet industry. If this court were to determine that the forum selection clause contained in Facebook's TOU [Terms of Use] was unenforceable, the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies.[115]

The enforcement of forum-selection clauses also benefits consumers by encouraging and protecting innovation.  Denying Internet companies certainty as to what laws will apply to them—or subjecting them to an unpredictable patchwork of potentially conflicting state regulations—could "chill free speech and the rapidly expanding field of Internet commerce,"[116]

---

[113] *Atl. Marine*, 571 U.S. at 67.

[114] *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010).

[115] *Miller v. Facebook*, No. 09-cv-2810-RLV, 2010 WL 9525523, at *1 (N.D. Ga Jan. 15, 2010).

[116] *Archdiocese of St. Louis v. Internet Entm't Grp., Inc.*, No. 99-cv-27-SNL, 1999 WL 66022, at *3 (E.D. Mo. Feb. 12, 1999).

1284731

and "inconsistent regulatory schemes could paralyze the development of the Internet altogether."[117]

Accordingly, it is in the public's interest to enforce Facebook's forum-selection clause. If the Court declines to dismiss this litigation, it must transfer it to the Northern District of California.

## V.   CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss Green's complaint as to it, without leave to amend and with prejudice. In the alternative, Facebook requests that the Court transfer this litigation to the Northern District of California.

Respectfully submitted,

Dated:  June 6, 2018

By:   */s/ Joseph Aronson*

KEKER, VAN NEST & PETERS LLP
MATAN SHACHAM
(*pro hac vice* application pending
TRAVIS SILVA
(*pro hac vice* application pending)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
Email:  mshacham@keker.com
          tsilva@keker.com

BONNER KIERNAN TREBACH & CROCIATA LLP
JOSEPH ARONSON (NH Bar #282)
40 Court Street, 3rd Floor
Boston, MA 02108
Telephone:  617 426 3900
Facsimile:  617 426 0380
Email:  jaronson@bonnerkiernan.com

Attorneys for Defendant
FACEBOOK, INC.

---

[117] *Am. Libraries Ass'n v. Pataki*, 969 F.Supp.160, 181 (S.D.N.Y. 1997).

24