**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Isaac Green

  v.          Civil No. 18-cv-203-PB

YouTube, LLC et al. [1]

**REPORT AND RECOMMENDATION**

  Before the court for preliminary review is pro se plaintiff Isaac Green's First Amended Complaint (Doc. Nos. 59-1, 104)[2] ("FAC") and an addendum (Doc. No. 71) to the FAC. See Aug. 17, 2018 Order (referring FAC to magistrate judge for preliminary review). Also before the court for consideration and a report and recommendation ("R&R") are the plaintiff's motions seeking preliminary injunctive relief (Doc. Nos. 4, 9, 18).

**Background**

I. Procedural History[3]

---

 [1]The defendants in this case are: Google LLC; Twitter, Inc.; YouTube, LLC; Patreon, Inc.; Facebook, Inc.; GoFundMe, Inc.; and Blogspot.com.

 [2]Green's First Amended Complaint was initially docketed as Document No. 59-1, but has been redocketed as Document No. 104.

 [3]Green has sought to consolidate this case with another case filed in this court, DeLima v. YouTube, Inc., No. 17-cv-733-PB (D.N.H.), in which the plaintiff asserted substantially similar facts and legal arguments. In an endorsed order issued simultaneously with this Report and Recommendation, the court

After Green filed his initial complaint (Doc. No. 1), those
defendants that had been served moved to dismiss the complaint.
See Doc. Nos. 24, 25, 45, 48.  In addition to filing objections
(Doc. Nos. 53, 56) to the motions to dismiss, Green filed the
FAC, which has been referred to the undersigned magistrate judge
for a preliminary review.  See Aug. 17, 2018 Order.

After plaintiff filed the (proposed) FAC, defendants again
moved to dismiss, see Doc. Nos. 68, 78, 79, 103, asserting
essentially the same arguments set forth in their motions to
dismiss the original complaint and including arguments to
dismiss new claims Green asserted in the FAC.  Green filed an
objection (Doc. No. 82) to Patreon's motion to dismiss (Doc. No.
68), and then did not file a response to the dispositive motions
filed by Google, Twitter, YouTube, and Facebook (Doc. Nos. 78,
79).  The June 18, 2018 procedural order (Doc. No. 90), issued
before the end of the objection period for those defendants'
motions, stated that the court would hold those motions (Doc.
Nos. 68, 78, 79) in abeyance pending a ruling on certain other
motions in the case and issuance of a briefing schedule, see
June 18, 2018 Order (Doc. No. 90).  GoFundMe then filed its own
motion to dismiss (Doc. No. 103), asserting arguments similar to

---

has denied the motion to consolidate as moot, as that action has
been dismissed.  See Sept. 18, 2018 Order (ECF No. 147)
(dismissing operative complaint and approving Aug. 30, 2018 R&R
(ECF No. 144)), id.

those asserted by the other defendants.  Green did not file a response to GoFundMe's motion to dismiss.

II.  Factual Background

Green's FAC contains no clear narrative and is difficult to understand.  Many, if not most, of Green's assertions are legal conclusions that are not supported by any specific facts.

Liberally construed, the FAC appears to allege the following facts and claims against defendants Google LLC ("Google"); Twitter, Inc. ("Twitter"); YouTube, LLC ("YouTube"); Facebook, Inc. ("Facebook"); Patreon, Inc. ("Patreon"); GoFundme, Inc. ("GoFundMe"); and Blogspot.com.  Green's claims arise out of his assertions that his rights were violated in connection with his use of the defendants' websites and online platforms.  Green alleges that he has created one or more accounts on YouTube, Google, Facebook, Twitter, Patreon, and/or GoFundMe.  Using those accounts, Green posts content on the internet to be seen by those who subscribe to, patronize, or follow his accounts.  The only claims Green makes that specifically describe the defendants' actions which Green alleges have caused him injury are:

- Defendant Twitter deleted one or more of Green's Tweets, and, on one occasion, deleted 500 or more of Green's followers;

3

- Green has had three YouTube channels, and YouTube has closed one of the channels, put two "false strikes" on his second channel, and prevented Green from streaming live videos on his third channel;

- Google, as the owner of YouTube, is responsible for YouTube's actions taken against Green;

- Facebook prevented Green from posting YouTube videos to his Facebook account, deleted Green's account and Green's "virtual property" associated with that account[4]; and

- Green raised over $1000 in a fundraiser he began on the GoFundMe platform, and then GoFundMe closed Green's account and returned the pledged donations to the donors.

Green has not made specific allegations of injurious acts taken against him by Patreon or Blogspot.com.

Green generally asserts that, due to the number of people who view and subscribe to his accounts on the defendants' websites, he is entitled to certain advertising revenue earned by those websites, particularly YouTube. Green claims that the defendants have embezzled such revenue from him. Green further claims the defendants have engaged in various tactics to

---

[4]The FAC does not explain what "virtual property" is, but refers the court to Hosseinzadeh v. Klein, 276 F. Supp. 3d 34 (S.D.N.Y. 2017), which Green describes as "[t]he ruling case for all of the virtual property rights." That case does not contain the phrase "virtual property" or otherwise make clear what Green intends to identify as his virtual property in this case.

misappropriate and deprive Green of money to which he is entitled, including tampering with his accounts and manipulating data concerning the number of people who subscribe to and view his posts, videos, and Tweets.  Although Green concedes that he "does not actually know how much is paid [by YouTube/Google] per ad, per view and per option of advertising," FAC at 5, he states in the FAC that the defendants are embezzling 90% or 100% of the money he has earned on the defendants' internet platforms. Green also claims that the defendants, motivated by political bias, based on the views he expresses in his videos and other postings, have locked him out of his various accounts; closed his accounts; denied him the ability to post some or all content; deleted subscribers, comments, and view-counts relating to his accounts; placed false strikes on his accounts; stole or otherwise denied Green access to his "virtual property," and otherwise harassed him.

III. <u>Claims</u>

      Generously construing the assertions in the FAC, the court finds that Green asserts the following claims in this action:

      1.    One or more of the defendants have violated the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1) ("FLSA"), by failing to pay Green minimum wage.

      2.    One or more of the defendants have embezzled money earned by Green on the defendants' internet platforms and engaged in other criminal activity with regard to Green's use of those platforms.

3.   One or more of the defendants have violated Green's
First Amendment right to free speech, and engaged in
viewpoint discrimination, by: a) censoring the content he
posts on the defendants' internet platforms; b) denying
Green access to the defendants' internet platforms; and c)
requiring that Green agree to "Terms of Service" which
allow the defendants to curtail his free speech rights.

4.   Facebook has violated Federal Communications
Commission ("FCC") rules.

5.   Facebook targeted Green because he was involved in
efforts to expose and prevent sex trafficking, in violation
of: (a) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030,
et seq. ("CFAA"); (b) the Stop Advertising Victims of
Exploitation Act of 2015, 18 U.S.C. § 1591(a) ("SAVE Act");
and the combined Allow States and Victims to Fight Online
Sex Trafficking Act and Stop Enabling Sex Traffickers Act
("FOSTA-SESTA").

6.   Facebook sold Green's personal data to advertisers, in
violation of his right to privacy in that information.

7.   All of the defendants improperly forced Green to
consent to "Terms of Service" which "violate the
Constitution, Federal laws, and civil rights, as well as
virtual property rights . . . [are] discriminatory, and
allow for the theft and 'virtual closing' of sites . . .
and [] virtual laws, that they make up" in order to utilize
each of the defendants' internet platforms or services.

8.   All of the defendants: spied on, targeted, and
demeaned Green; placed false strikes on Green's accounts;
closed or shut down Green's accounts; locked Green out of
his accounts; tried to use United Kingdom law or "Sharia
law" in the United States to avoid complying with federal
law; denied Green the use of and access to his "virtual
property"; stole Green's intellectual property and "virtual
property"; placed warnings on Green's website; tried to
prevent people from accessing Green's accounts on the
defendants' platforms; prevented Green's accounts from
being viewed on cell phones; engaged in "shadowbanning" and
cyberbullying; manipulated data relating to Green's
accounts on the defendants' platforms; failed to "monetize"
Green's accounts, and violated "internet rules."

9.    Defendants violated Donald Trump's December 2017
Executive Order.


**Preliminary Review of FAC**

I.   Standard

The court construes the pleadings of pro se litigants

liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The

court may dismiss a complaint, sua sponte, "[i]f it is crystal

clear that the plaintiff cannot prevail and that amending the

complaint would be futile," Gonzalez-Gonzalez v. United States,

257 F.3d 31, 37 (1st Cir. 2001), or if the plaintiff has had an

opportunity to amend the complaint to cure its deficiencies.

See John v. Whole Foods Mkt., No. 2:13-CV-00144-NT, 2013 WL

5571203, at *3, 2013 U.S. Dist. LEXIS 147471, at *6 (D. Me. Sep.

19, 2013) ("'Generally, a district court may not sua sponte

dismiss a complaint where the filing fee has been paid unless

the court gives the plaintiff the opportunity to amend the

complaint.'" (quoting Apple v. Glenn, 183 F.3d 477, 478 (6th

Cir. 1999)), R&R approved, No. 2:13-CV-00144-NT, 2013 WL

5571203, 2013 U.S. Dist. LEXIS 146008 (D. Me. Oct. 9, 2013)

(approving R&R recommending sua sponte dismissal for failure to

state a claim where plaintiff had been given two opportunities

to present an amended complaint that states a claim).  "[I]f a

defendant files a motion to dismiss for failure to state a

claim, the plaintiff, as a practical matter, has notice of the

7

motion and an opportunity to amend the complaint." Gonzalez-Gonzalez, 257 F.3d at 36. To determine whether the complaint states a claim upon which relief might be granted, whether the court is ruling sua sponte or on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court sets aside any statements "that are merely conclusory," and construes "all factual allegations in the light most favorable to the [plaintiff] to determine if there exists a plausible claim upon which relief may be granted." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017); see also Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).


II.   Claim by Claim Analysis[5]

      A.    FLSA – Claim 1

      Plaintiff asserts that one or more of the defendants violated FLSA by failing to pay Green minimum wage. To state a

---

[5]There is a substantial question in this case as to whether this court is the proper venue for this action, which was brought by a Florida resident against six California-based companies, and which fails to allege any conduct that occurred in this judicial district. See 28 U.S.C. § 1391 (governing venue of civil actions brought in federal district courts). Several of the defendants have argued that this court does not have personal jurisdiction over them in this matter. See, e.g., Doc. No. 68, at 6 (Patreon); Doc. No. 79-1, at 13 (Facebook); Doc. No. 103, at 11 (GoFundMe). The court need not reach these issues, to the extent it finds that Green fails to state any claim upon which relief might be granted.

FLSA claim, a plaintiff must assert: "(1) that he was employed by the defendants; (2) his work involved interstate activity; and (3) he performed work for which he was under-compensated." Chen v. C & R Rock Inc., No. 14-cv-114-AJ, 2016 WL 1117416, at *3, 2016 U.S. Dist. LEXIS 36951, at *7 (D.N.H. Mar. 22, 2016). Green does not allege, or state facts to suggest, that he was ever employed by any of the defendants.  Accordingly, the district judge should dismiss Green's claim asserted under FLSA, identified in this R&R as Claim 1.


B.    Criminal Acts – Claim 2

Green alleges that all of the defendants have engaged in criminal conduct.  Green does not have a protected interest or right to have alleged wrongdoers investigated or criminally prosecuted.  Cf. Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")).  Accordingly, the district judge should dismiss Green's claim seeking relief on the basis that the defendants engaged in criminal conduct, identified in this R&R as Claim 2.

C.   First Amendment – Claim 3

Green asserts that the defendants have discriminated against him based on his political views and censored his expression of those views on the defendants' internet platforms, in violation of his First Amendment rights.  "[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." Hudgens v. NLRB, 424 U.S. 507, 513 (1976).  "[O]nly the government can violate First Amendment rights: every First Amendment claim thus requires state action in some sense." McGuire v. Reilly, 386 F.3d 45, 60 (1st Cir. 2004).  Defendants are all private companies.  Green has failed to allege any state action giving rise to the alleged violations of his First Amendment rights, and the district judge should dismiss Green's First Amendment claims, identified in this R&R as Claim 3.


D.   FCC Rules – Claim 4

Green alleges, without elaboration, that defendants engaged in conduct that violated FCC Rules.  Green has provided a link to a page on the FCC website, but does not cite to any law giving rise to a private right of action under any particular FCC rule, and does not state any factual allegations to support any claim that this court can identify, upon which relief might be granted.  Accordingly, the district judge should dismiss

Green's claim that defendants violated FCC rules, identified in this R&R as Claim 4.

### E.    CFAA, SAVE Act & FOSTA-SESTA – Claim 5

Green asserts that Facebook "targeted" him because he was using his Facebook account to try to expose and prevent sex trafficking.   Green claims that Facebook is subject to civil and/or criminal liability for violations of the CFAA, the SAVE Act, and FOFSTA-SESTA.

### 1.    Civil Liability

#### a.    CFAA

Damages are available under the CFAA when someone "'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer'" resulting in harm exceeding $5,000.00. Wentworth-Douglass Hosp. v. Young & Novis Prof'l Ass'n, No. 10-cv-120-SM, 2012 WL 2522963, at *1-2, 2012 U.S. Dist. LEXIS 90446, at *2 (D.N.H. June 29, 2012) (quoting 18 U.S.C. § 1030(a)(2)(c)) (emphasis omitted).   Green has not asserted any facts indicating that Facebook has accessed his computer, that his computer is "protected" under the CFAA, or that Facebook caused him injury compensable by damages under the CFAA.

Accordingly, Green has not stated a claim for relief under the
CFAA.


### b.    SAVE Act

The SAVE Act provides a private right of action for a
victim of sex trafficking suing an interactive computer service
that ran an advertisement which facilitated sex trafficking with
regard to that victim.  See 18 U.S.C. § 1595.  Green has not
asserted that he has been a victim of sex trafficking, and thus
has not stated a claim for relief under the SAVE Act.


### c.    FOSTA-SESTA

The Communications Decency Act, 47 U.S.C. § 230(c)(1)
("CDA") provides immunity, under certain circumstances, to a
defendant who is "a provider or user of an interactive computer
service."  47 U.S.C. § 230(c)(1); see Small Justice LLC v.
Xcentric Ventures, LLC, 873 F.3d 313, 318 (1st Cir. 2017).
FOSTA-SESTA amends the CDA to remove immunity from suit for
interactive computer services, such as the defendants, under
limited circumstances concerning sex trafficking.  Those
circumstances are irrelevant to this action and do not relate to
any claim asserted by Green.  Green does not, therefore, state a
claim under FOSTA-SESTA upon which relief can be granted.

2.    Criminal Liability

To the extent the CFAA, SAVE Act, and FOSTA-SESTA set forth criminal penalties, Green does not have a right to compel the criminal prosecution or nonprosecution of Facebook.  Cf. Nieves-Ramos, 737 F. Supp. at 728 (citing Linda R. S., 410 U.S. at 619).  The district judge should dismiss all of Green's claims, identified collectively as Claim 5, seeking relief based on alleged criminal violations of those statutes.

F.    Facebook's Sale of Personal Data – Claim 6

Green asserts that Facebook sold his "personal data" to advertisers.  Green appears to intend to assert a violation of his right to privacy in the information he describes as "personal data."  Without further allegations that Facebook engaged in tortious conduct or breached a contract, Green has failed to state a claim based on the alleged sale of his personal data by Facebook, and the district judge should dismiss this claim, identified in this R&R as Claim 6.

G.    Terms of Service Agreements – Claim 7

Green objects to the defendants' policies that require him to consent to "Terms of Service," "Terms of Use," "Terms and Conditions," or similar agreements, prior to using defendants' internet platforms.  Green cites as the bases for this claim

that the agreements defendants required him to sign violate the
law or otherwise violate his rights, and that defendants
sometimes change the agreements without notice.  Green's
assertions in this regard are entirely conclusory and fail to
state any specific term of any agreement that violates any right
accruing to Green or otherwise gives rise to a cause of action.
Green has failed to state any cognizable claim in this matter
based on being required to agree to "Terms of Service," or
similar agreements, to use any of the defendants' websites.
Accordingly, the district judge should dismiss this claim,
identified in this R&R as Claim 7.


        H.    <u>Other Assertions – Claim 8</u>

In Claim 8, as identified in this R&R, Green has asserted a
laundry list of allegedly wrongful acts taken against him by the
defendants which, he alleges, have caused him harm.  Section 230
of the CDA provides, in pertinent part, that "[n]o provider or
user of an interactive computer service shall be treated as the
publisher or speaker of any information <u>provided by another</u>
<u>information content provider</u>."  <u>Id.</u> (emphasis added).

> Section 230 defines an "interactive computer service"
> ("ICS") as "any information service, system, or access
> software provider that provides or enables computer
> access by multiple users to a computer server."
> Subsection 230(f)(3) then defines an "information
> content provider" ("ICP") as "any person or entity that
> is responsible, in whole or in part, for the creation

or development of information provided through the
Internet or any other interactive computer service."
Small Justice LLC, 873 F.3d at 318 (citations omitted).  "[T]o
avail itself of the immunity set forth in § 230(c)(1)," a
defendant "must be a provider or user of an [ICS]"; defending a
claim "based on information provided by another [ICP]"; and the
claim at issue must "treat [the ICS] as the publisher or speaker
of that information."  Id.

Green's allegations underlying Claim 8 describe conduct
that constitutes the "exercise of a publisher's traditional
editorial functions – such as deciding whether to publish,
withdraw, postpone or alter content," for which the CDA
immunizes the defendant ICPs.  Hiam v HomeAway.com, Inc., 267 F.
Supp. 3d 338, 346 (D. Mass. 2017), aff'd, 887 F.3d 542 (1st Cir.
2018).  Accordingly, the allegations underlying Claim 8 are
insufficient to state a cause of action upon which relief might
be granted, and the district judge should dismiss the claims
identified collectively in this R&R as Claim 8.


I.   Executive Order – Claim 9

Green asserts, without explanation or support, that
defendants have violated a December 2017 Executive Order issued
by Donald Trump.  This claim, identified in this R&R as Claim 9,
is an unsupported conclusory statement.  Nothing before the
court suggests that any executive order gives rise to a right

that a private party may enforce against another private party, or that Green otherwise has a private right of action arising from the issuance of that Executive Order.  The district judge should dismiss Claim 9 for failure to state a claim upon which relief can be granted.

### J.    Claims Asserted on Behalf of Others

In the FAC, Green has asserted claims based on allegations that the defendants have violated the rights of individuals other than himself.  In particular, the FAC contains assertions concerning Google, as the owner of Blogspot.com, committing acts which violated the rights of Natasha DeLima, the plaintiff in DeLima, No. 17-cv-733-PB, for activity occurring on that website.

Green cannot assert a claim for relief in this case based on the violation of DeLima's rights, or the rights of other individuals, as he is not a lawyer and thus cannot represent the interests of anyone other than himself in this court.  See 28 U.S.C. § 1654; LR 83.2(d).  Accordingly, to the extent Green has asserted claims on behalf of DeLima, or any other individual, the district judge should dismiss those claims.

**Preliminary Injunction Motions**

Green has moved for preliminary injunctive relief.  See
Doc. Nos. 4, 9, 18.  "'A plaintiff seeking a preliminary
injunction must establish that he is likely to succeed on the
merits, that he is likely to suffer irreparable harm in the
absence of preliminary relief, that the balance of equities tips
in his favor, and that an injunction is in the public
interest.'"  Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015)
(citation omitted); see also Voice of the Arab World, Inc. v.
MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).
Demonstrating a likelihood of success on the merits is a
prerequisite to obtaining preliminary injunctive relief.  See
Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir.
2006) ("if the moving party cannot demonstrate that he is likely
to succeed in his quest," preliminary injunctive relief is
properly denied without further analysis).  The burden of proof
is on the movant.  See id.

For reasons explained in this R&R, Green has not stated any
claim upon which relief might be granted in the FAC, despite
having received direct notice of potential defects in his claims
through each defendant's filing of one or more motions to
dismiss (Doc. Nos. 24, 25, 45, 48, 68, 78, 79, 103), and,
indirectly, through this court's orders dismissing substantially
the same claims in DeLima, No. 17-cv-733-PB, with respect to

which Green sought consolidation.  Accordingly, Green has not demonstrated any likelihood of success on the merits of any claim in this action, and the district judge should deny Green's motions for preliminary injunctive relief (Doc. Nos. 4, 9, 18) on that basis.

## Defendants' Pending Motions

The court has taken under advisement dispositive motions (Doc. Nos. 24, 25, 45, 48, 68, 78, 79, 103) defendants have filed in this case.  Defendants have also filed a motion to stay proceedings (Doc. No. 80) in this case pending resolution of the defendants' dispositive motions.  Upon approval of this R&R, the court should deny each of those motions as moot.

## Conclusion

For the foregoing reasons, the district judge should dismiss the FAC (Doc. No. 104) in its entirety, deny Green's requests for preliminary injunctive relief (Doc. Nos. 4, 9, 18), and deny as moot defendants' pending dispositive motions (Doc. Nos. 24, 25, 45, 48, 68, 78, 79, 103) and motion to stay (Doc. No. 80).  Any objections to this R&R must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion. Failure to file specific written objections to the R&R within

the specified time waives the right to appeal the district

court's order.   See Santos-Santos v. Torres-Centeno, 842 F.3d

163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

March 13, 2019

cc:   Isaac Green, pro se
      Timothy John McLaughlin, Esq.
      Matan Shacham, Esq.
      Travis Silva, Esq.
      Joseph H. Aronson, Esq.
      Stephen J. Soule, Esq.
      Nolan C. Burkhouse, Esq.